## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSE RIOS** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-4104** |
| **CLASSIC SOUTHERN HOME CONSTRUCTION, INC., ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiffs for conditional certification of the above-captioned matter as a collective action. Defendants, Classic Southern Home Construction, Inc. ("Classic") and Richard Bates ("Bates"), oppose the motion.[2] For the following reasons, the motion is **GRANTED IN PART**.

### BACKGROUND

Plaintiffs filed a complaint in the above-captioned matter on September 3, 2015,[3] alleging that they were employed as manual laborers by Southern and its owner and operator, Bates, and "were not paid one-and-a-half times their regular hourly rate for all hours worked in excess of forty hours a workweek."[4] Plaintiffs also filed this lawsuit on behalf of similarly situated employees who were allegedly deprived of overtime pay in violation of the Fair Labor Standards Act ("FLSA").[5] *See* 29 U.S.C. § 207(a)(2).[6] Plaintiffs contend that defendants willfully violated the

---

[1] R. Doc. No. 7.
[2] R. Doc. No. 12.
[3] R. Doc. No. 1.
[4] R. Doc. No. 1, ¶ 1.
[5] R. Doc. No. 1, ¶¶ 5, 12-13.
[6] 29 U.S.C. § 207(a)(2) provides that "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

FLSA and that defendants must compensate them and a class of similarly situated workers for unpaid overtime wages, as well as reasonable attorney's fees and costs.[7]

Plaintiffs request that the Court conditionally certify this case as a collective action and authorize notice to "[a]ll individuals who worked or are working performing manual labor for Defendants Classic Southern Home Construction, Inc. and Richard Bates during the previous three years, and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive full overtime compensation."[8]

## LAW AND ANALYSIS

### I.    Conditional Certification

The FLSA provides that an action to recover "unpaid overtime compensation . . . may be maintained against any employer . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, the FLSA does not define "similarly situated" or otherwise explain how the certification of such collective actions should proceed. Likewise, the U.S. Court of Appeals for the Fifth Circuit has not established a procedure for district courts to follow. *E.g.*, *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) ("Like several other circuits, this court has never set a legal standard for collective-action certification.").

There are two main lines of authority that prescribe different methods of determining whether a case may proceed as a collective action pursuant to § 216(b). *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995).[9] The first is known as "two-stage class

---

[7] R. Doc. No. 1, ¶¶ 62, 70, e.

[8] R. Doc. No. 7-1, at 6 (emphasis omitted).

[9] The Court notes that *Mooney* and other cases cited herein involve claims under the Age Discrimination in Employment Act ("ADEA"), which explicitly incorporates § 216(b) and the

certification," which was developed in a line of cases starting with *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and the second is referred to as "spurious" class certification, as typified by *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).[10] Because the two-stage class certification procedure is routinely used by all sections of this Court, and because the parties use this approach,[11] the Court finds that the *Lusardi* procedure is appropriate in this case. *See also Perkins v. Manson Gulf, L.L.C.*, No. 14-2199, 2015 WL 771531, at *1-2 (E.D. La. Feb. 23, 2015) (Africk, J.); *Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2014 WL 5810529, at *1-3 (E.D. La. Nov. 7, 2014) (Africk, J.).

**II.**     *Lusardi* **Analysis**

The Fifth Circuit has explained the typical *Lusardi* procedure:

> Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action through discovery.

---

FLSA collective action provisions. *See Mooney*, 54 F.3d at 1212. Accordingly, such cases are fully applicable here.

[10] The spurious class certification procedure uses the factors employed by Rule 23(a) of the Federal Rules of Civil Procedure—numerosity, commonality, typicality, and adequacy of representation—to determine if a collective action should be certified pursuant to § 216(b). *Mooney*, 54 F.3d at 1214. "Under this methodology, the primary distinction between [an FLSA] representative action and a [Rule] 23 class action is that persons who do not elect to opt-in to the . . . representative action are not bound by its results. In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results." *Id.* at 1214.

[11] Plaintiffs cite this approach, R. Doc. No. 7-1, at 11-13, while defendants do not cite any applicable legal framework.

*Mooney*, 54 F.3d at 1213-14 (footnote omitted); *see also Roussell*, 441 F. App'x at 226; *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 518-19 (5th Cir. 2010).

The second stage of the *Lusardi* procedure "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214. The Fifth Circuit observed that "the *Lusardi* . . . line of cases, by its nature, . . . lends itself to *ad hoc* analysis on a case-by-case basis." *Id.* at 1213. Only the first stage is implicated by the instant motion.[12]

The "lenient standard" at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). However, "[w]hile the standard at this stage is 'not particularly stringent,' it is by no means automatic." *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (Fallon, J.) (citation omitted) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1213 (11th Cir. 2001)). "[T]he Court is mindful that it must guard against 'fishing expeditions' at employers' expense." *White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 WL 2903070, at *6 (E.D. La. June 13, 2013) (Morgan, J.).

"[A]n FLSA class determination is appropriate when there is 'a demonstrated similarity among the individual situations . . . [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877-78 (E.D. La. 2008) (Zainey, J.) (quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92-43, 1992 WL 91946, at *4-5 (E.D. La. Apr. 16, 1992) (Feldman, J.)). As stated, this determination is usually made based on "the pleadings and

---

[12] *See, e.g.*, R. Doc. No. 7-1, at 11-13.

any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214. "Thus, a court can foreclose a plaintiff's right to proceed collectively only if 'the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'" *Xavier*, 585 F. Supp. 2d at 878 (quoting *Crain*, 1992 WL 91946, at *5).[13]

The complaint alleges that plaintiffs and similarly situated manual laborers employed by defendants "frequently worked more than (40) hours a week" over "six and sometimes seven days per week."[14]The complaint also alleges the existence of "numerous persons similarly situated to the named Plaintiffs" who were employed by defendants, paid at an hourly rate, and incorrectly treated "as exempt from the FLSA's overtime requirements" in violation of the FLSA.[15]

Attached to the motion are declarations from all seven plaintiffs which provide additional detail regarding the allegations in the complaint.[16] All plaintiffs worked for defendants as construction laborers at various times between 2013 and 2015.[17] Five out of the seven plaintiffs worked for defendants in Lafayette and Baton Rouge, Louisiana, and North Carolina.[18] One plaintiff worked only in Lafayette and Baton Rouge,[19] and one worked in Texas, Missouri,

---

[13] U.S. District Courts in the Southern District of Texas have framed the standard in this way: "At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. 07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (Rosenthal, J.). The Court notes that it would reach the same conclusion under this three-pronged framework.
[14] R. Doc. No. 1, ¶ 60.
[15] R. Doc. No. 1, ¶¶ 63-66.
[16] *See* R. Doc. Nos. 7-5, 7-6, 7-7, 7-8, 7-9, 7-10, 7-11.
[17] R. Doc. No. 7-5, ¶ 2-3; R. Doc. No. 7-6, ¶ 2-3; R. Doc. No. 7-7, ¶ 2; R. Doc. No. 7-8, ¶ 2-3; R. Doc. No. 7-9, ¶ 2; R. Doc. No. 7-10, ¶ 2-3; R. Doc. No. 7-11, ¶ 2-3.
[18] R. Doc. No. 7-5, ¶ 4; R. Doc. No. 7-6, ¶ 4; R. Doc. No. 7-8, ¶ 4; R. Doc. No. 7-10, ¶ 4; R. Doc. No. 7-11, ¶ 4.
[19] R. Doc. No. 7-8, ¶ 4.

Georgia, Indiana, and Alabama.[20] The plaintiffs worked comparable shifts and six out of the seven plaintiffs worked seven days a week.[21]

In all seven declarations, plaintiffs affirm that they were paid between $15.00 and $20.00 per hour and that they were paid the same hourly rate even for hours worked in excess of forty hours per week.[22] Six plaintiffs worked for defendants in Baton Rouge and Lafayette and report the same non-payment of overtime wages. A seventh plaintiff, Jose Hernandez (who worked in Texas, Missouri, Georgia, Indiana, and Alabama, but not Lafayette or Baton Rouge like the other plaintiffs), affirms that he worked with approximately six to ten other employees at any given time on the same shifts, and that he knows from conversations with his co-workers that they also "were not paid an overtime rate of pay" for hours in excess of forty per week.[23]

Considering the lenient standard, the Court finds that the complaint and plaintiffs' affidavits set forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. This alleged common practice of failing to pay employees doing similar work for overtime constitutes a "factual nexus which binds the named plaintiffs and the potential class members together." *Xavier*, 585 F. Supp. 2d at 877-78 (internal quotation marks omitted). There is no indication that this policy or practice "relates to specific circumstances personal to the plaintiff[s]," *id.* at 878, and there are sufficient allegations to satisfy plaintiffs' lenient burden regarding a company-wide policy or practice of

---

[20] R. Doc. No. 7-7, ¶ 4.

[21] R. Doc. No. 7-5, ¶ 6; R. Doc. No. 7-6, ¶ 6; R. Doc. No. 7-7, ¶ 6; R. Doc. No. 7-8, ¶ 6; R. Doc. No. 7-10, ¶ 6; R. Doc. No. 6, ¶ 2-3. One plaintiff worked six days a week. R. Doc. No. 7-9, ¶ 5.

[22] R. Doc. No. 7-5, ¶ 5; R. Doc. No. 7-6, ¶ 5; R. Doc. No. 7-7, ¶ 8; R. Doc. No. 7-8, ¶ 5; R. Doc. No. 7-9, ¶ 7; R. Doc. No. 7-10, ¶ 5; R. Doc. No. 7-11, ¶ 5.

[23] R. Doc. No. 7-7, ¶¶ 5, 6, 9.

non-payment of overtime. Accordingly, this matter should conditionally proceed through discovery as a collective action.

Defendants oppose the motion to conditionally certify the class, but they do not directly engage with the legal standards applicable to conditional certification of a collective action. Rather, defendants largely dispute the merits of the named plaintiffs' claims for non-payment of overtime. The example of plaintiff, Rios, is illustrative. Rios states in his declaration that he earned $20.00 per hour but that he was not paid an overtime rate for hours in excess of forty hours per week.[24] Bates states in his declaration that Rios was paid $18.00 per hour at one stage of his employment and $20.00 per hour at another stage, and that Rios was fully compensated for his overtime.[25] Defendants submit what appears to be a paycheck to Rios dated "9-13-13" for $2,050.00 with unexplained handwritten annotations apparently indicating it was payment to Rios for 80 hours at $18.00 an hour and 22.5 hours at $27.00.[26] The plaintiffs point out in reply, however, that such calculation would equal a payment of $2047.50, not $2,050.00 as reflected on the check. As plaintiffs argue, a check for $2,050.00 is consistent with 102.5 hours at $20.00 per hour, without extra payment for overtime hours.[27] Accordingly, plaintiffs are correct that "[t]he parties offer two competing interpretations of the checks."[28]

Questions regarding whether overtime was paid go well beyond the scope of the conditional certification issue and into the merits of plaintiffs' FLSA claims which merits are not appropriately addressed at this stage. *See Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (Ellison, J.) ("Indeed, as discovery usually has not been conducted at this

---

[24] R. Doc. No. 7-1, ¶ 5.
[25] R. Doc. No. 12-1, ¶ 5.
[26] *See* R. Doc. No. 12-2, at 1.
[27] R. Doc. No. 17, at 2-3.
[28] R. Doc. No. 17, at 2.

stage, courts do not review the underlying merits of the action in determining whether to conditionally certify."). Accordingly, without expressing any opinion as to defendants' arguments that plaintiffs were fully paid for their overtime work, the Court concludes that such arguments are better reserved for a later stage in the proceedings.

Defendants also assert in their briefing that various plaintiffs secured employment with falsified documentation, and perhaps used false names.[29] However, with respect to the propriety of conditionally certifying this collective action, defendants cite no authority attaching legal significance to such allegations. In reply, plaintiffs cite cases holding that such allegations are irrelevant to an FLSA action to recover overtime wages.[30] *See, e.g.*, *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013) (holding that a party's "ability to recover unpaid wages under the FLSA does not depend on his immigration status" even if that party used false Social Security number to obtain the job); *see also In re Reyes*, 814 F.2d 168, 170 ("[I]t is well established that the protections of the [FLSA] are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant."). Accordingly, the Court concludes that defendants' allegations regarding plaintiffs' immigration status are not germane to the conditional-certification issue.

Finally, defendants refer to an incident in which at least one plaintiff allegedly attempted to commit insurance fraud and other purported motivations plaintiffs would have to sue defendants.[31] Such issues are also not responsive to the issue of conditional certification. To the extent that such incidents are a basis for an argument that defendants have individualized defenses with respect to specific plaintiffs, the Court cannot, without a fully developed record, readily

---

[29] R. Doc. No. 12, at 1-2, 5-6.
[30] R. Doc. No. 17, at 4-5.
[31] R. Doc. No. 12, at 6-7.

examine such assertions. An argument that "defendant[] would be claiming disparate defenses against the various class members . . . is better reserved for a motion to decertify after notice and discovery." *Skelton*, 994 F. Supp. 2d at 787; *see also White*, 2013 WL 2903070, at *6 ("The Court recognizes that Defendants may succeed in having this case decertified. Nevertheless, the Court finds that Plaintiffs, at this time, have satisfied their lenient burden and have demonstrated 'a reasonable basis for the allegation that a class of similarly situated persons may exist.'").

Accordingly, the Court conditionally certifies the above-captioned matter as a collective action and notice shall be sent to: All individuals who worked during the previous three years or who are working performing manual labor for Classic Southern Home Construction, Inc. and Richard Bates, as well as all individuals who are eligible for overtime pay pursuant to the Fair Labor Standards Act and who did not receive full overtime compensation.[32]

### III.    Proposed Notice

Defendants do not address plaintiffs' proposed notice or related discovery or procedure. Nonetheless, the Court finds that plaintiffs' request for a six-month opt-in period is excessive and unwarranted. The parties are directed to reach an agreement regarding discovery and a notice with a sixty-day opt-in period on or before Tuesday, January 6, 2015.

### CONCLUSION

For the foregoing reasons,

---

[32] 29 U.S.C. § 255 provides for a two year limitations period, "except that a cause of action arising out of a willful violation may be commenced within three years." Plaintiffs have alleged that defendants "willfully violated Plaintiffs rights under the FLSA because Defendants knew or showed reckless disregard for the fact that their compensation practices violated the FLSA." R. Doc. No. 1, ¶ 62. However, defendants have not challenged plaintiffs' request for the three-year period for notice purposes, and any determination as to defendants' willfulness would be premature at this stage. Accordingly, the Court finds that a three-year period is appropriate.

**IT IS ORDERED** that the motion is **GRANTED IN PART**, as set forth in this order and reasons, and that the above-captioned matter is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b), with a sixty-day opt-in period.

**IT IS FURTHER ORDERED** that counsel for both parties are to meet and confer regarding the proposed notice and consent form no later than **Wednesday, December 30, 2015.** Counsel must in good faith attempt to resolve any disagreements concerning the notice and consent forms, including but not limited to those regarding: the mailing of a second "reminder notice," the inclusion of the Court's name, the necessity of a disclaimer, the mention of the possibility of decertification, and the appropriate contact information that defendant should be required to provide to counsel for plaintiff.

**IT IS FURTHER ORDERED** that if the parties are unable to agree on the proposed notice, the proposed consent form, and/or the discovery to which plaintiff is entitled by **Tuesday, January 5, 2016**, the parties shall contact the Court to schedule a telephone status conference to address the matter.

New Orleans, Louisiana, December 22, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**