UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSE RIOS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-4104** |
| **CLASSIC SOUTHERN HOME CONSTRUCTION, INC., ET AL.** | **SECTION I** |

## ORDER AND REASONS

The Court has pending before it (1) a motion[1] filed by defendants, Classic Southern Home Construction, Inc. ("Southern"), and Richard Bates ("Bates"), to decertify the conditionally certified class and (2) a motion[2] filed by plaintiffs requesting the use of representative testimony at trial in the above-captioned matter. Both motions are opposed.[3] For the following reasons, the motion to decertify is **GRANTED** and the motion for representative testimony is **DISMISSED AS MOOT**.

## BACKGROUND

Plaintiffs filed a complaint in the above-captioned matter on September 3, 2015,[4] alleging that they were employed as manual laborers by Southern and its owner and operator, Bates, and that they "were not paid one-and-a-half times their regular hourly rate for all hours worked in excess of forty hours a workweek."[5] Plaintiffs also filed this lawsuit on behalf of similarly situated employees who were allegedly deprived of overtime pay in violation of the Fair Labor Standards

---

[1] R. Doc. No. 56.
[2] R. Doc. No. 55.
[3] R. Doc. Nos. 59, 60.
[4] R. Doc. No. 1.
[5] R. Doc. No. 1, ¶ 1.

Act ("FLSA").[6] *See* 29 U.S.C. § 207(a)(2).[7] Plaintiffs contend that defendants willfully violated the FLSA and that defendants must compensate them and a class of similarly situated workers for unpaid overtime wages as well as reasonable attorney's fees and costs.[8]

Plaintiffs filed a motion to conditionally certify this case as a collective action which motion the Court granted over defendants' opposition.[9] The Court conditionally certified the class and directed that notice be sent to "All individuals who worked during the previous three years or who are working performing manual labor for Classic Southern Home Construction, Inc. and Richard Bates, as well as all individuals who are eligible for overtime pay pursuant to the Fair Labor Standards Act and who did not receive full overtime compensation."[10] The Court then approved the parties' joint proposed notice to potential class members.[11] Approximately thirty individuals have opted-in as members of the class. Defendants now move to decertify the conditionally certified class.

## LAW AND ANALYSIS

### I. Standards on Decertification

The FLSA provides that an action to recover "unpaid overtime compensation . . . may be maintained against any employer . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, the FLSA does not define "similarly situated" or otherwise explain how the certification of such collective

---

[6] R. Doc. No. 1, ¶¶ 5, 12-13.
[7] 29 U.S.C. § 207(a)(2) provides that "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."
[8] R. Doc. No. 1, ¶¶ 62, 70, e.
[9] *See* R. Doc. No. 26.
[10] R. Doc. No. 26, at 9.
[11] R. Doc. No. 28.

2

actions should proceed. Likewise, the U.S. Court of Appeals for the Fifth Circuit has not established a standard procedure for district courts to follow. *E.g.*, *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) ("Like several other circuits, this court has never set a legal standard for collective-action certification.").

With respect to the applicable procedure, for reasons set forth in the order and for reasons conditionally certifying this matter as a collective action, the Court will continue to apply the "two-stage class certification," which was developed in a line of cases starting with *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Defendants' motion implicates the second stage of the *Lusardi* procedure, which "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Mooney v. Aramco Servs.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

The Fifth Circuit has observed that "the *Lusardi* . . . line of cases, by its nature, . . . lends itself to *ad hoc* analysis on a case-by-case basis." *Id.* at 1213. "At this second stage, the burden is on [plaintiffs] to prove that the individual class members are similarly situated." *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008). Furthermore, the second stage is "more stringent" with respect to the showing required of plaintiffs. *Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711, 721 (E.D. La. 2015) (Brown, J.); *accord Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 931 (S.D. Tex. 2009) (Rosenthal, J.) ("[T]he 'similarly situated' inquiry is more searching than it was at the conditional certification stage.").

With respect to the substantive standard, as noted above, the "FLSA does not define what it means for employees to be 'similarly situated' such that collective adjudication" of overtime claims is appropriate. *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 573 (E.D. La. 2008) (Vance, J.). The *Lusardi* test for whether employees are similarly situated such that a matter

3

can be collectively adjudicated considers: "(1) the extent to which the employment settings of employees are similar or disparate; (2) the extent to which any defenses that an employer might have to overtime . . . claims are common or individuated; and (3) general fairness and procedural considerations." *See id.* "These three factors are not mutually exclusive, and there is considerable overlap among them." *Id.* at 574. "[T]he more dissimilar plaintiffs are and the more individuated [defendants'] defenses are, the greater doubts there are about the fairness of a ruling on the merits—for either side—that is reached on the basis of purportedly representative evidence." *Id.* Generally, "FLSA class determination is appropriate when there is 'a demonstrated similarity among the individual situations . . . [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877-78 (E.D. La. 2008) (Zainey, J.) (quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92-43, 1992 WL 91946, at *4-5 (E.D. La. Apr. 16, 1992) (Feldman, J.)).

**II.    Analysis**

Plaintiffs and defendants have submitted very little new evidence with respect to the decertification issue. Defendant Bates resubmits the same affidavit he submitted in opposition to conditional certification,[12] in which he asserts generally that "[e]ach of the Plaintiffs was paid overtime wages for all overtime hours worked," as well as specific details regarding the employment history of certain named plaintiffs.[13] Defendants also provide hundreds of pages of timesheets, checks, payroll records, and identification pertaining to named plaintiffs and opt-in plaintiffs. In opposition to the motion to decertify, plaintiffs submit an affidavit[14] by plaintiffs'

---

[12] *Compare* R. Doc. No. 12-1 with R. Doc. No. 56-2.
[13] R. Doc. No. 56-2, at 1, 2-6.
[14] R. Doc. No. 59-2.

4

counsel attesting that he prepared an exhibit "compiling and/or summarizing the responses that each Plaintiff provided in his or her Interrogatory responses in this matter."[15] That exhibit lists the hours allegedly worked by each named and opt-in plaintiff, as well their job description, hourly rate, and where they worked.[16] The Court will address these materials, and the parties' arguments for and against decertification, in the framework of the three-factor *Lusardi* test.

**1.) Similarity of Employment Settings**

As noted above, plaintiffs submit a table which lists the job titles/descriptions and locations worked as to the named and opt-in plaintiffs.[17] According to that table, plaintiffs worked variously in "general construction labor" or other more specific descriptions falling under that general heading, such as "plaster," "drywall," "painter," "sheet rocker," and "framer."[18] Also according to the table, plaintiffs earned hourly rates falling within a range of $10.00 to $20.00 per hour. Finally, the table reflects work building Chick-Fil-A restaurants and Love's Truck Stops in Louisiana, Indiana, North Carolina, Alabama, Texas, Missouri, Nebraska, and Florida.[19]

Superficially, the job descriptions are similar and the hourly pay rates fall within the same general range. However, "the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions." *Kelly v. Healthcare Servs. Grp., Inc.*, No. 13-00441, 2015 WL 3464131, at *4 (E.D. Tex. June 1, 2015). Furthermore, any similarity could easily be the result of the vagueness with which plaintiffs have articulated the job descriptions, duties, and locations of the named and opt-in plaintiffs. Neither plaintiffs nor defendants have submitted evidence regarding details often considered by other courts when

---

[15] R. Doc. No. 59-1.
[16] R. Doc. No. 59-1.
[17] R. Doc. No. 59-1, at 2-3.
[18] *See* R. Doc. No. 59-1, at 2-4.
[19] R. Doc. No. 59-1, at 2-4.

5

deciding whether to decertify a class, such as variations between management and policies at specific worksites across the eight states in which plaintiffs worked. *See Proctor*, 250 F.R.D. at 283 (explaining that substantial record evidence demonstrated that "Plaintiffs' claims vary from store to store and manager to manager").

The lack of detail provided by the parties precludes any meaningful analysis of the similarity of plaintiffs' employment settings. Accordingly, considering that it is plaintiffs' burden to establish that opt-in class members are similarly situated to the named plaintiffs, the Court finds that this factor weighs against collective adjudication.

### 2.) Common or Individuated Defenses

Although defendants categorically deny owing overtime to any named or opt-in plaintiff, their defenses are more granular. Defendants deny that they ever employed particular named and opt-in plaintiffs.[20] Defendants deny that other particular plaintiffs ever worked enough hours to be entitled to overtime.[21] As to still other particular plaintiffs, defendants assert that they paid all overtime that was actually worked.[22] Defendants also raise an argument specific to a particular worksite by asserting that the Baton Rouge Chick-Fil-A project "did not require overtime labor."[23] Defendants additionally dispute wage rates and dates of employment. Finally, defendants allege that specific named plaintiffs have a unique animus against defendant, Bates and, therefore, plaintiffs have a motive to bring false overtime claims against defendants based on Bates' alleged interference with an insurance fraud scheme attempted by some plaintiffs.[24]

---

[20] R. Doc. No. 56-1, at 4-5.
[21] R. Doc. No. 56-1, at 5.
[22] R. Doc. No. 56-1, at 5-9.
[23] R. Doc. No. 56-2, at 2.
[24] R. Doc. No. 56-1, at 11-12.

6

In response, plaintiffs attempt to downplay the individualized nature of these contentions. Plaintiffs suggest that the claims of an opt-in plaintiff alleged never to have been employed at all can be dismissed to simplify trial of the collective action.[25] As to the defense that some plaintiffs did not work overtime at all and others were paid for the overtime they worked, plaintiffs insist that "[i]t is exactly these type of class-wide proofs that are apt dispute for collective resolution" because "[a]ll of the Plaintiffs contest the assertion that they worked no overtime; and all of the Plaintiffs contest the assertion that they were ever paid overtime."[26] Plaintiffs do not respond to defendants' allegations that some named plaintiffs have an improper motive to bring claims against defendants.

The Court is not persuaded that defendants' factual defenses are subject to "class-wide proof." Certainly, defendants offer a global defense: they do not owe overtime to any named or opt-in plaintiff. But plaintiffs have submitted no evidence to suggest that proof that one plaintiff is owed overtime wages, if accepted as true by the trier of fact, would support an inference that every other plaintiff is also owed overtime wages. "The mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences." *Xavier*, 585 F. Supp. 2d at 877; *accord Maynor*, 671 F. Supp. 2d at 931 (holding in the context of decertification motion that the "mere fact that violations occurred cannot be enough to establish similarity"). Based on the nature of the defenses defendants articulate, and the lack of any showing of a potential "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]," the Court finds that defendants'

---

[25] R. Doc. No. 59, at 7-8.
[26] R. Doc. No. 59, at 8.

7

defenses are fact-specific as to each plaintiff, and that this factor weighs against collective adjudication. *See Xavier* 585 F. Supp. 2d at 877-78.

### 3.) General Fairness and Procedural Considerations

Finally, the Court must consider general fairness and procedural considerations. Plaintiffs assert that collective adjudication is the most efficient course and preferable to the filing of individual lawsuits in districts across the country.[27] Yet efficiency must be balanced with fairness, and, as previously stated, "the more dissimilar plaintiffs are and the more individuated [defendants'] defenses are, the greater doubts there are about the fairness of a ruling on the merits—for either side—that is reached on the basis of purportedly representative evidence." *Johnson*, 561 F. Supp. 2d at 574. On the record presented, the Court is not persuaded that the obvious procedural benefit of a single collective adjudication of plaintiffs' claims would outweigh the danger of depriving defendants of the fair opportunity to present a full and individualized defense to those claims. Accordingly, this factor weighs against collective adjudication.

### 4.) Conclusion

It is plaintiffs' burden to demonstrate that the opt-in plaintiffs are "similarly situated" and to show "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Xavier*, 585 F. Supp. 2d at 877-78 (alternations omitted); *Proctor*, 250 F.R.D. at 280. Plaintiffs' burden is more stringent at this second decertification stage. *Chapman*, 126 F. Supp. 3d at 721. The Court concludes that plaintiffs have not made such a showing. After an opportunity for discovery, they have submitted little more than the allegations that the opt-in plaintiffs worked for defendants and that plaintiffs were denied overtime. Mere allegations of FLSA violations, without more, do not suffice. *See Xavier*, 585 F.

---

[27] R. Doc. No. 59, at 8-9.

Supp. 2d at 877; *Maynor*, 671 F. Supp. 2d at 931. Based on the thin record presented to the Court, collective adjudication of the claims of the opt-in plaintiffs is not appropriate. Defendants' motion to decertify should therefore be granted. Because the conditionally certified class is decertified, the claims of the opt-in plaintiffs should be dismissed without prejudice. *Xavier*, 585 F. Supp. 2d at 878 ("If the Court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims."). As the trial in this matter will not resolve the claims of any opt-in plaintiffs, plaintiffs' motion for representative testimony as to those claims is moot.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion to decertify is **GRANTED** as set forth herein.

**IT IS FURTHER ORDERED** that the claims of opt-in plaintiffs, Justin Stern, David Vicknair, Jr., Stephen Thom, Lorenzo Williams, Maurianno Parks, Joshua Junot, Curtis Hawhee, Eduardo Chavarrya, Brandon Keith Taylor, Chad Utley, Chad Hollenbaugh, David Surface, Jeffrey Crumpler, Ronald Martin, Lawrence Charrier, Troy Taylor, Tamela Jones, Blaine Beason, Roy Taylor, Michael McBeth, Richard Swanberg, Robert Ramos, Mattthew Hovick, Ryan Reed, James Bass, Allan Luzadder, and Christopher Reagan, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for representative testimony is **DISMISSED AS MOOT**.

New Orleans, Louisiana, May 9, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**